IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-82-KFP |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks review of the Social Security Administration's decision denying her application for Social Security Disability benefits and Supplemental Security Income benefits. The undersigned, having considered the record, briefs, applicable regulations, and caselaw, finds the decision of the Commissioner of Social Security must be AFFIRMED.

**I.      STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II. PROCEDURAL BACKGROUND

Plaintiff was 48 years old when the Administrative Law Judge rendered a decision finding her not disabled. R. 37, 38. Plaintiff alleged disability due to PTSD, depression, bipolar, Hashimoto's, and diabetes. R. 239. Her initial application was denied, and she requested a hearing before an ALJ. R. 21–23, 153. After a hearing, the ALJ issued a decision finding Plaintiff not disabled. R. 39, 84. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–3; *see* 42 U.S.C. § 405(g).

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff has severe impairments of bipolar disorder, anxiety disorder, substance use disorder, obesity, diabetes mellitus, hypothyroidism, and Hashimoto's thyroiditis, but she does not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 27. He then found that Plaintiff has the residual functional capacity to perform light work with certain limitations.[1] R. 30.

After considering Plaintiff's experience as a property manager, the ALJ determined that Plaintiff had no relevant past work experience. R. 36–37. In light of Plaintiff's age, education, work experience, and RFC, the ALJ found that there were other jobs in the

---

[1] Specifically, the ALJ determined that Plaintiff cannot climb ladders, ropes, or scaffolds and that "she can perform simple tasks in two-hour increments" that do not require contact with the general public. R. 30.

national economy that Plaintiff could perform, including a routing clerk, small products assembler, officer helper, or document preparer-scanner. R. 37–38. The ALJ ultimately concluded that Plaintiff had not been under a disability from the alleged onset date, September 26, 2018, through the date of the ALJ's decision, May 1, 2020. R. 38–39.

## IV.  DISCUSSION

Plaintiff raises the following four issues for review: (1) the ALJ failed to properly evaluate the medical opinion evidence, (2) the ALJ erred in determining Plaintiff's RFC,[2] (3) the ALJ relied on a flawed hypothetical question, and (4) the ALJ failed to properly evaluate Plaintiff's subjective statements.

### A.     The ALJ properly evaluated the medical evidence.

The regulations applicable to claims filed after March 2017 provide the following:

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020).[3] [In particular, a]n ALJ must explain how he considered the factors of supportability and consistency. [*See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id*. The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021).

---

[2] Plaintiff's brief does not specifically identify the second issue. However, because Plaintiff discusses it as an additional error within the first issue, the Court will address it.
[3] Plaintiff's claim was filed on November 26, 2018. R. 109. Accordingly, the Court evaluates the ALJ's decision under these regulations.

An ALJ need only explain the consideration of the factors on a source-by-source basis; the regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). He "is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion.[] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Additionally, an ALJ "is not required to base [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053-JHE, 2022 WL 860290, at *6–7 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014); 20 C.F.R. § 404.1520c(a)). Indeed, "an ALJ's RFC assessment need not 'match or mirror the findings or opinions of any particular medical source . . . because the reasonableness of assessing the RFC rests with the ALJ.'" *Boone v. Kijakazi, Acting Comm'r of Soc. Sec.*, No. 1:21-CV-34-JTA, 2022 WL 4133288, at *5 (M.D. Ala. Sept. 12, 2022) (citation omitted); 20 C.F.R. § 416.946. As long as the ALJ complies with the regulations and substantial evidence supports his evaluation of the medical opinion, the court should affirm. *Pritchard v. Barnhard*, 140 F. App'x 815, 819 (11th Cir. 2005).

On February 5, 2019, Dr. Robert Estock, the state-agency psychiatrist who reviewed Plaintiff's file, opined that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, maintaining pace, and managing herself. R. 112–14, 117–19. Dr. Estock also determined that Plaintiff had

4

moderate limitations in carrying out detailed instructions, maintaining concentration, coordinating and interacting with others, accepting instruction, responding appropriately to changes, and setting realistic goals. R. 118–19. Overall, Dr. Estock concluded Plaintiff could understand and carry out simple instructions, concentrate for two hours, and would likely miss one or two days of work per month. R. 119. The ALJ made two major conclusions in evaluating Dr. Estock's opinions: (1) his opinions are "mostly persuasive" and (2) his finding that Plaintiff would miss one or two days per month is "not consistent with the medical records indicating no serious recurring decompensation."[4] R. 34. The ALJ's remaining discussion explains the foundation for these conclusions using the consistency and supportability factors.

The ALJ found Dr. Estock's opinions to be inconsistent with medical records: "There are treatment notes indicating that the claimant had normal thought processes, normal though[t] content, no confusion, normal memory, intact associations, [an] average fund of knowledge[,] . . . [an] intact attention span, intact concentration, normal judgment, normal insight, and good impulse control." R. 34. Despite Plaintiff's anxiety and depression, the ALJ recognized Plaintiff's positive reactions to conservative care, especially once she stopped using marijuana. R. 34. He also contrasted Plaintiff's alleged fear of others with her own statements that she gets along well with people she knows,

---

[4] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace." *Moon v. Astrue*, No. 5:11-CV-2536-AKK, 2012 WL 3854460, at *5 n.4 (N.D. Ala. Aug. 31, 2012) (citing 20 C.F.R. Part 404, Subpart P, Appendix I, 12.00 Mental Disorders, C.4).

interacts with family and her significant other, and occasionally shops in large stores. R. 34.

Indeed, there is some evidence contradicting Dr. Estock's opinions. While Dr. Estock limited Plaintiff to activities performed in a "well-spaced" environment with tactful, constructive, and non-threatening supervisors, objective evaluations revealed good judgment, insight, and impulse control. R 35, 549, 551, 553, 555, 557, 568, 570, 572–73, 614. Plaintiff often stated she was doing okay or improving, R. 555, 570, 573, 575, and several evaluations revealed a normal mood, appropriate affect, and lack of paranoia or suicidal thoughts. R. 551, 553, 555, 557, 570, 572–73, 581, 614, 618.

The ALJ also illustrated his basis for finding Dr. Estock's opinions were unsupported, particularly as it pertains to Plaintiff's mental health issues. R. 34–36. Despite claims of hallucinations, the ALJ stressed there is no objective evidence of "recent emergency medical or legal interventions or recurring changes to new antipsychotic medications" or "any ongoing or active psychosis[.]" R. 34, 36. Despite claims of suicidal thoughts, "the record does not indicate any ongoing suicidal ideation." R. 36. Overall, the ALJ explained that Dr. Estock's opinion that Plaintiff would need to miss one to two days per month due to psychiatric symptoms was unpersuasive because the objective medical evidence showed "no serious recurring decompensation."[5] R. 34. In other words, Dr.

---

[5] Plaintiff takes issue with the word "decompensation," arguing "[s]uch a conclusory finding does not 'articulate' how the ALJ considered the supportability and consistency of this finding[]" and "there is no medical authority to support his lay conclusion that an individual must have 'serious recurring decompensation' to miss work 1-2 times a month[.]" Doc. 14 at 7–8. Had the ALJ rested on this one statement, the Court might find the ALJ failed to sufficiently explain his reasoning. But the ALJ went on to thoroughly explain his bases for discounting Dr. Estock's conclusions. See R. 34–36. Further, the ALJ

Estock's conclusions were unsupported by the objective medical evidence. Thus, the ALJ discounted Dr. Estock's opinions because they were both inconsistent with and unsupported by the totality of the evidence.

Plaintiff claims the ALJ inadequately explained his decision to discount Dr. Estock's findings. Doc. 14 at 5–7. This argument fails. As discussed above, the ALJ thoroughly discussed his bases for discounting Dr. Estock's opinions, focusing on the consistency and supportability factors, and he was not required to discuss every piece of evidence. *Gogel*, 2021 WL 4261218, at *9 (citing *Dyer*, 395 F.3d at 1211).

Still, Plaintiff claims the decision to disregard Dr. Estock's short instructions and tasks limitation is especially erroneous in light of the jobs identified by the ALJ. Doc. 14 at 5–6. Essentially, Plaintiff argues a conflict exists between the reasoning levels required by the ALJ's proposed jobs and Dr. Estock's suggested restrictions. The ALJ determined Plaintiff could work as a routing clerk, small products assembler, or office helper, which each require a reasoning level of two.[6] R. 38; Doc. 14 at 6. He also suggested the job of document preparer-scanner, which requires a reasoning level of three.[7] R. 38; Doc. 14 at 6.

---

did not assert that a plaintiff "*must have* 'serious recurring decompensation' to miss work 1-2 times a month[.]" Doc. 14 at 7 (emphasis added). This shows that he found Dr. Estock's claims to be unsupported because the evidence does not show, for example, that Plaintiff's mental health issues had risen to a level of decompensation. This is a proper basis for discounting a medical opinion. *See Morrisette v. Berryhill*, No. CA 17-306-MU, 2018 WL 2392545, *4 n. 6 (S.D. Ala. May 25, 2018) (ALJ properly discounted physician's assessment in part because it was inconsistent with the record as a whole and displayed a lack of decompensation) (citing *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014)).

[6] A job requiring level 2 reasoning requires "the ability to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (citing *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 4th 1315, 1323–24 (11th Cir. 2021)).

[7] A job requiring level 3 reasoning requires "the ability to '[a]pply commonsense understanding furnished in written, oral, or diagrammatical form [and to d]eal with problems involving several concrete variables in or from standardized situations.'" *Viverette*, 13 F.4th at 1315 (citing DOT, App. C, § III, 1991 WL 688702).

But the ALJ had no obligation to mirror Dr. Estock's medical opinion. The responsibility of determining the RFC lies with the ALJ alone. *See Boone*, 2022 WL 4133288, at *5 (citation omitted); 20 C.F.R. § 416.946. Had the ALJ limited Plaintiff to short instructions and tasks, there may have been a conflict between the RFC and the assigned jobs.[8] *See Viverette*, 13 F.4th at 1316 (citing *Keller v. Berryhill*, 754 F. App'x 193, 197–98 (4th Cir. 2018) ("A limitation to *short and simple* instructions appears more consistent with Reasoning Development Level 1 or Level 2 than with Level 3.")) (emphasis added). However, the ALJ chose not to incorporate Dr. Estock's suggestion that Plaintiff be limited to short instructions and tasks but rather only limited her to simple instructions. R. 30. As such, Plaintiff has not shown a conflict exists.[9]

Plaintiff's argument that Dr. Estock based the RFC on his own opinion also fails. The ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *McCarver*, 2022 WL 860190, at *6 (citing *Castle*, 557 F. App'x at 853–54; 20 C.F.R. § 404.1520c(a)). Electing not to accept portions of Dr. Estock's opinions does not mean the ALJ inserted his own opinion—he was not

---

[8] Plaintiff provides case law holding that only jobs with reasoning levels of one are appropriate for individuals with limitations to short instructions or tasks. Doc. 14 at 6. Because the ALJ did not incorporate that restriction, this case law is inapplicable.

[9] Plaintiff does not appear to allege a conflict exists between the "simple" limitation and the jobs identified by the ALJ. However, the Court has identified a conflict—though a harmless one—with the "simple" limitation and the document preparer-scanner job because it requires a reasoning level of three. *See Viverette*, 13 F.4th at 1316–17 (rejecting the Seventh's Circuit's finding that a plaintiff with a limitation to simple work could perform a level three job because the "[l]evel 3 reasoning . . . requires more than the ability to carry out simple instructions.") (citing *Buckwalter*, 5 F.4th at 1323). This error is harmless because the ALJ included three other jobs with reasoning levels of two that do not conflict with the "simple" limitation. R. 38; *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (finding harmless error where ALJ identified one job in conflict with RFC because "the ALJ still concluded that he could perform two other jobs" with the appropriate reasoning level).

8

required to rely on, defer, or give any special weight to Dr. Estock's medical opinions. *Id.* The ALJ properly evaluated Dr. Estock's opinions in compliance with the regulations. *Pritchard*, 140 F. App'x at 819.

### B.     Substantial evidence supports the RFC.

The RFC is a determination the ALJ makes based on "all the relevant medical and other evidence" in the record, including both medical and nonmedical. 20 C.F.R. §§ 416.945(a)(1), 416.945(a)(3). It is "used to determine [one's] capability of performing various designated levels of work[.]" *Pupo v. Comm'r of Soc. Sec.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing 20 C.F.R. § 416.967).

As long as the ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" the RFC is supported by substantial evidence. *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)). Even if some evidence exists supporting a more restrictive RFC, if substantial evidence supports the decision, the court must affirm. *See Jacks v. Comm'r of Soc. Sec. Admin*, 688 F. App'x 814, 819–20 (11th Cir. 2017).

The ALJ restricted Plaintiff to light work based on her "marijuana abuse, obesity, diabetes, mellitus, and hypothyroidism/Hashimoto's thyroiditis, as well as fatigue caused by her mental impairments[.]"[10] R. 36. He also found that her "bipolar disorder and anxiety disorder restrict her to performing simple tasks with only occasional changes and no

---

[10] The ALJ also accounted for Plaintiff's ongoing fatigue, "which is consistent with her diagnoses of hypothyroidism and depression" and "limited her to performing work at the light exertional level with non-exertional restrictions." R. 35.

9

directed contact with the general public." R. 36. The ALJ based this determination on Plaintiff's medical records and activities of daily living. *See* R. 34–36.

The ALJ concluded that "the medical findings do not support the existence of limitations greater than the [RFC]." *See* R. 35–36. There is no question substantial evidence supports the physical RFC, and Plaintiff makes no argument to the contrary.[11]

The mental RFC determination presents the tougher question. The ALJ emphasized that Plaintiff's hallucinations improved with time, and legal intervention was never required. R. 32, 36. Further, the ALJ recognized Plaintiff often presented without ongoing psychosis or suicidal ideation, showed normal thought processes, content, attention, concentration, judgment, and insight, had an intact memory, and had good impulse control. R. 32, 34–36. Upon review, the Court concludes substantial evidence supports the RFC's mental limitations. As the ALJ discussed, many evaluations detail a euthymic mood and appropriate affect, R. 506, 581, 618, a lack of paranoia or suicidal thoughts, R. 35, 506, 525, 532, 535, 555, 557, 568, 570, 572–73, 618, an intact memory, attention span, and concentration, R. 532, 535, and good judgment, insight, and impulse control. R 525, 549, 551, 553, 555, 557, 568, 570, 572–73, 614.

The ALJ based the mental RFC on Plaintiff's activities of daily living, noting Plaintiff occasionally shops and drives, maintains a relationship with a boyfriend and family members, and performs chores around her home in short spurts. R. 34–36.

---

[11] The ALJ explained that "[p]hysically, the claimant's diabetes and hypothyroidism have been treated effectively with only conservative treatment. Diabetic foot examinations were normal, and the claimant was able to ambulate with a normal gait." R. 35. He credited her claims of ongoing fatigue as consistent with her diagnoses and limited her to light work with additional postural limitations. R. 35. With this, the ALJ has provide a sufficient rationale linking the physical RFC to the evidence.

10

Accordingly, the Court is satisfied that the ALJ provided a sufficient rationale linking the evidence to the mental RFC.

Plaintiff alleges the ALJ erred by not including Dr. Estock's more restrictive findings in the RFC and points to evidence supporting these findings. Doc. 14 at 7–8. The Court cannot reweigh the evidence—its only task is to determine whether substantial evidence exists. *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239. While it is true that some evidence exists supporting a more restrictive RFC, because substantial evidence supports the decision, the Court must affirm. *See Jacks*, 688 F. App'x at 819–20.

### C. The ALJ did not rely on a flawed hypothetical question.

At step five, the Commissioner must "demonstrate the existence of [a] 'significant number of jobs in the national economy' that the claimant can perform and that accounts for his [RFC], age, education, and work experience." *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 489–90 (11th Cir. 2015) (citations omitted). "To do so, an ALJ may rely solely on the testimony of a vocational expert to whom he poses a hypothetical question that comprises all of the claimant's impairments, including those relating to the claimant's concentration, persistence, and pace." *Id.* (citations omitted). An ALJ "is not required to include limitations in a hypothetical that are unsupported by the medical evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

A hypothetical is not flawed solely because it fails to account for the concentration, persistence, or pace limitations where the question "included the limitations supported by the medical evidence[.]" *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is

11

required is that the hypothetical question be supported by the medical evidence in the record.")); *Winschel*, 631 F.3d at 1181 (ALJ was required to explicitly incorporate limitation in hypothetical because he "did not indicate that medical evidence suggested [the plaintiff's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical.").

Plaintiff's argument as to the hypothetical is twofold: (1) the ALJ erred by failing to include the "short" restriction in a hypothetical, Doc. 14 at 6, and (2) the ALJ erred by failing to include Plaintiff's limitations in concentration, persistence, and pace in the hypothetical. Doc. 14 at 10–11. Both arguments fail.

First, the ALJ had no obligation to include the "short" limitation in the hypothetical posed to the VE—the ALJ properly rejected it as unsupported by the medical evidence. *Carpenter*, 614 F. App'x at 489 (citing *Crawford*, 363 F.3d at 1161).

Second, even though the ALJ did not explicitly mention the concentration, persistence, and pace limitations in his hypothetical, the medical evidence supports the hypothetical and the question still accounted for Plaintiff's limitations. R. 69. The ALJ found Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace. R. 29. The hypothetical presented to the VE included a limitation to "simple tasks" in "two-hour increments" with "occasional changes[,]" making no mentioning of the three specific limitations. R. 69. This is not in error. The ALJ explained that the record as a whole "indicates that the claimant has moderate limitations in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks[,]" and he accounted for any deficiencies by limiting her to simple tasks in two-hour

12

increments with occasional changes.[12] R. 29. Thus, the hypothetical was sufficient because it was supported by medical evidence in the record. *Markuske*, 572 F. App'x at 767. Also, the moderate limitations were accounted for in the hypothetical. The question featured an individual limited to simple tasks with occasional breaks working in two-hour increments. This question encompassed Plaintiff's moderate limitations in concentration, persistence, and pace. Accordingly, the ALJ was not obligated to explicitly mention these limitations in the hypothetical, and the Court finds no error. *See Winschel*, 631 F.3d at 1181.

### D. The ALJ properly evaluated Plaintiff's subjective statements.

"A claimant may establish that [s]he has 'a disability through his own testimony of pain or other subjective symptoms.'" *Nye v. Comm'r of Soc. Sec.*, 524 F. App'x 538, 543 (11th Cir. 2013) (citing *Dyer*, 395 F.3d at 1210). When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms or (2) evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Once the plaintiff establishes that she has an impairment that one could reasonably expect would produce her alleged symptoms, the ALJ must then evaluate (1) the claimant's daily activities; (2) the "duration, frequency, and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating factors"; (4) the effectiveness and side effects of any

---

[12] As discussed *supra*, the ALJ identified several records indicating Plaintiff had only moderate limitations in concentration, persistence, and pace.

medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. *Nye*, 524 F. App'x 538, 543 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Next, the ALJ evaluates the plaintiff's statements in light of the evidence and considers any inconsistencies. 20 C.F.R. § 404.1529(c)(4). If the ALJ decides not to credit a claimant's testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). Subjective complaint credibility is within the province of the ALJ, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citation omitted), and the Court cannot disturb that finding so long as he clearly articulates it and supports it with substantial evidence. *Id.* (citing *Foote*, 67 F.3d at 1561–62).

Plaintiff claims her conditions cause her several difficulties, including trouble walking, concentrating, understanding and remembering information, completing tasks, following instructions, and getting along with others. R. 254–55. The ALJ considered the evidence and found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" R. 35. The ALJ based this determination on Plaintiff's daily activities and the medical records.

The ALJ found that Plaintiff's activities of daily living were inconsistent with her claims. R. 35. She testified there was nothing around her home that she could not do. R. 35. The ALJ identified other inconsistencies: although Plaintiff claims to fear others, she appears able to maintain relationships with her boyfriend and family members; although

Plaintiff claims she cannot deal with the public, she occasionally shops at large stores; although Plaintiff claims she cannot concentrate and has trouble remembering information, she spends time watching television and playing computer games. R. 32–33. Overall, the ALJ found that Plaintiff's daily activities "were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations."[13] R. 35.

The ALJ also compared Plaintiff's medical records to her subjective statements and identified several inconsistencies. As the ALJ explained, Plaintiff's diabetes and hypothyroidism appear to have been treated effectively with conservative treatment. R. 35. Plaintiff claims to have difficulty walking, yet "[d]iabetic foot examinations were normal, and [Plaintiff] was able to ambulate with a normal gait." R. 35. Plaintiff claims to have difficulty remembering information, concentrating, and completing tasks, but the record shows normal thought processes, an intact memory, intact attention, and no confusion. R. 32. He concluded that "the record simply does not support the allegations of ongoing disabling symptoms alleged by the claimant." R. 35. Finally, the ALJ identified Plaintiff's daily marijuana use as an aggravating factor, recognizing Plaintiff "was found to have a euthymic mood and appropriate affect" after she ceased using it. R. 36.

---

[13] Plaintiff claims the ALJ put undue weight on Plaintiff's activities of daily living. Doc. 14 at 14. But social security regulations and Eleventh Circuit case law support consideration of daily activities when evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (holding that, while participation in daily activities for short durations does not necessarily disqualify a claimant, it is not improper for an ALJ to consider them); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 880 (11th Cir. 2014) (daily activities of managing personal care, preparing meals, shopping, caring for pets, watching television, using a computer, and socializing with others supported ALJ's credibility determination, even though there was ample evidence supporting a contrary conclusion). The ALJ did not put undue weight on Plaintiff's daily activities—he appropriately considered them along with other evidence.

The Court concludes that substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective statements. The ALJ evaluated Plaintiff's claims in light of her daily activities and medical records, identified inconsistencies, and adequately articulated them. *See* R. 34–36. Ultimately, he did not find the statements to be credible, and the Court may not disturb that finding. *Mitchell*, 771 F.3d at 782.

## V. CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1. The Commissioner's decision is AFFIRMED.

2. A final judgment will be entered separately.

DONE this 26th day of September, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE